319 F.3d 550
J. Robert LUNNEY, Administrator of the Estate of Peter Tomich, a/k/a Peter Tonich, a/k/a Peter Herceg Tonic, a/k/a Petar Herceg Tonic, Plaintiff-Appellant,v.UNITED STATES of America, Richard J. Danzig, Secretary of the Navy and Department of the Navy, Defendants-Appellees.
Docket No. 02-6044.
United States Court of Appeals, Second Circuit.
Argued: October 30, 2002.
Decided: February 13, 2003.

Phillip C. Landrigan, Lunney & Murtagh, LLC, White Plains, New York, for Plaintiff-Appellant.
Robert W. Sadowski, Assistant United States Attorney, New York, New York (James B. Comey, United States Attorney for the Southern District of New York, Jeffery S. Oestericher, Assistant United States Attorney, on the brief), for Defendants-Appellees.
Before: JACOBS and SACK, Circuit Judges, and TRAGER, District Judge.*
JACOBS, Circuit Judge.

1
The Navy Medal of Honor was awarded posthumously in 1942 to Peter Tomich for extraordinary heroism exhibited on December 7, 1941 (the "Medal"). It was presented in 1944 to a representative of the United States Navy itself, no next of kin having been found, and the Medal has been in the Navy's custody ever since. Plaintiff J. Robert Lunney, as recently-appointed Administrator of the Tomich Estate, sued the United States, the Secretary of the Navy, and the Department of the Navy to compel presentation of the Medal, or its delivery or custody, to a person recently identified by Lunney's researches as Tomich's next of kin. Lunney appeals from a judgment of the United States District Court for the Southern District of New York (McKenna, J.) dismissing his complaint for lack of subject matter jurisdiction. Lunney alleges jurisdiction by virtue of 28 U.S.C. § 1331, and the federal government's waiver of sovereign immunity under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq.

2
The district court ruled that ultimate authority for "matters pertaining to the Medal of Honor rests with the President of the United States," who is not an "agency" within the meaning of the APA and whose actions may therefore not be challenged under it. Lunney v. United States, 2001 WL 1636965 at *3, 01 Civ. 0897(LMM), 2001 U.S. Dist. LEXIS 21178, at *6 (S.D.N.Y. Dec. 20, 2001). On appeal, Lunney argues that the district court erred because his APA claim challenged actions of the Navy, not any action of the President. For the reasons that follow, we affirm the dismissal for lack of subject matter jurisdiction. Plaintiff has failed to establish that the federal government waived its sovereign immunity under the APA as to his claim.

BACKGROUND

3
Peter Tomich was born in 1893 near the Dalmatian coast in the village of Prolog, which was then in Austria-Hungary. He immigrated to the United States in 1912, enlisted in the Army in 1917, and became a citizen in 1918. He was discharged from the Army in January 1919, promptly enlisted in the Navy, and held the rank of Chief Water Tender aboard the U.S.S. Utah on December 7, 1941. He sacrificed his life at Pearl Harbor to save many shipmates.

4
On March 4, 1942, Franklin D. Roosevelt awarded Tomich the Medal of Honor, with the following citation:

5
For distinguished conduct in [the] line of his profession and extraordinary courage and disregard of his own safety during the attack on the Fleet in Pearl Harbor, Territory of Hawaii, by the Japanese forces on December 7, 1941. Although realizing that the ship was capsizing, as a result of enemy bombing and torpedoing, he remained at his post in the engineering plant of the U.S.S. UTAH, until he saw that all boilers were secured and all fireroom personnel had left their stations, and by so doing he lost his own life.

6
The Medal was awarded pursuant to the former 34 U.S.C. § 363 (1919), recodified as amended as 10 U.S.C. § 6250, which allowed the President to award a posthumous Medal of Honor if "presented" to a "representative" of the hero, as designated by the President, within five years of the act or service justifying the award. Id.

7
Following the award of the Medal, the Navy tried unsuccessfully to find next of kin. The only family history available was in "Beneficiary Slips" filled out years earlier for the Navy, in which Tomich said he was "[n]ot married" and listed a "[c]ousin" John Tonich at an address in Los Angeles. In March 1942, the Secretary of the Navy wrote to the cousin in Los Angeles, "deem[ing] it an honor to transmit" the Medal, which was forwarded under separate cover. The Medal was returned with the postal notation "[n]o such address."

8
The Medal was formally presented on January 4, 1944 to the commander of the Destroyer Escort U.S.S. Tomich. Plaintiff and the government agree that this ceremony amounted to a "presentation" of the Medal within the meaning of 10 U.S.C. § 6250. Internal Navy records concerning the presentation state that the Medal was "to be displayed on board [the U.S.S. Tomich], in the status of a loan, to be recalled should a next of kin make a claim for same."

9
When the U.S.S. Tomich was decommissioned near the end of World War II, the Medal was returned to the Secretary of the Navy. In 1947, the Navy "forwarded" the Medal to the Utah state capital building for display alongside a memorial to the U.S.S. Utah. The Navy advised the Governor, however, that it might require return of the Medal in the "improbable" event that a "relative" of Tomich made a claim for it.

10
For reasons not in the record, the State of Utah returned the Medal in 1963. Since then, it has been in the custody of the Navy. The Medal is currently on display in the Navy Museum in Washington.

11
In 1997, the Congressional Medal of Honor Society (the "Society") and the New York Naval Militia (the "Militia") asked Lunney, a retired Rear Admiral and member of the Militia, to assist in locating Tomich's next of kin. The Society informed Lunney that Tomich's Medal was the only one of its kind in the last century that "ha[d] gone unclaimed," and requested Lunney's assistance in finding someone "to receive the award."

12
Lunney studied Navy files concerning Tomich's career, and traveled to Prolog, a village of about 400 that had been in Austria-Hungary when Tomich was born there (later part of Yugoslavia, now in the Federation of Bosnia and Herzegovina), where Lunney searched the birth, marriage, baptism, and death records of the local Roman Catholic church.

13
Lunney satisfied himself that Tomich's cousin John returned to Prolog in the early 1920s, and had a son named Dragutin Herceg Tonic, who survives. According to Lunney, Dragutin Herceg Tonic has designated his son, Screcko Herceg Tonic, as next of kin for purposes of receiving the Medal awarded to Tomich. Although Navy records stated that Tomich was "[n]ot married," Lunney reports that Tomich was married in Prolog in 1911 (a year before he left for America), and that his wife died in 1963 without issue.

14
Lunney offered the Navy his investigative materials, and urged the Navy to present the Medal to Screcko Herceg Tonic. In March 1998, the Secretary of the Navy referred the matter to the Navy's Board of Decorations and Medals (the "Board"), which in turn referred the matter to the Office of the Judge Advocate General of the Navy ("JAG").

15
JAG determined that the Medal had already been presented, to a Navy officer (commander of the U.S.S. Tomich) whom President Roosevelt designated as Tomich's representative. JAG opined therefore that the Medal was "property of the Navy" appropriately in the Navy's possession, that the Navy could take any action with respect to the Medal not prohibited by statute or regulation, and that transfer of the Medal was "a matter of policy and, subject to applicable restrictions, within the discretion of the Secretary of the Navy." In addition, JAG questioned Lunney's identification of the next of kin, pointing to discrepancies in the genealogical records.

16
On April 27, 1998, the Secretary of the Navy sent an internal memorandum to the Board stating that "[u]pon review of all relevant information concerning the Medal..., [the] Navy shall retain custody of the original medal." The Secretary suggested that "[c]ustody of the award shall continue under Navy control until such time as definitive evidence is presented to verify a next-of-kin relationship." On December 31, 1998, the Secretary informed the Militia of the Navy's decision. Lunney's subsequent petition to President Clinton was unsuccessful.

17
In May 2000 Lunney was issued Letters of Administration of Tomich's Estate by the Surrogate's Court of Queens County, New York. As administrator, Lunney commenced this federal lawsuit.

18
The complaint recites that the suit was "brought to insure that the only Medal of Honor that has been awarded in the past century but never presented be so presented," and argues that the Medal should be presented to Screcko Herceg Tonic as next of kin "at an appropriate ceremony."2 Presentation, according to Lunney, "would be at no cost to the Government," since "[o]nce the Medal [wa]s properly presented the next of kin w[ould] accept a reproduction or duplicate and allow the Navy to retain the original for appropriate display at mutually agreeable museums and other prominent locations."

19
Defendants moved to dismiss for lack of standing, lack of subject matter jurisdiction, and failure to state a claim. They argued (inter alia) that all decisions as to presentation of the Medal of Honor were wholly within the discretion of the President. Lunney's response conceded that, according to the Navy's records, the Medal had already been presented. Without abandoning his request for a presentation of the Medal, Lunney argued, that the relief he sought might be characterized as "custody" or "deliver[y]" of the Medal.

20
The district court granted defendants' motion to dismiss the APA claim on the ground that Lunney's claim was one for presentation by President Clinton, and that President Clinton's denial of Lunney's request for that relief was the only final action affecting the custody of the Medal. Lunney, 2001 WL 1636965 at *2-4, 2001 U.S. Dist. LEXIS 21178, at *6-8. Lunney appeals from this ruling.

DISCUSSION

21
We review the district court's ruling de novo. See Rent Stabilization Ass'n of New York v. Dinkins, 5 F.3d 591, 594 (2d Cir.1993). When (as here) a jurisdictional challenge under Fed.R.Civ.P. 12(b)(1) is addressed to the complaint, a court accepts as true all the factual allegations in the complaint and must draw all reasonable inferences in favor of the plaintiff. See Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton Coll., 128 F.3d 59, 63 (2d Cir.1997) (citing Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976)).

22
* A plaintiff has the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. Makarova v. United States, 201 F.3d 110, 113 (2d Cir.2000); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir.1996). Sovereign immunity is a jurisdictional bar, and a waiver of sovereign immunity is to be construed strictly and limited to its express terms. See Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) (interpreting scope of the federal government's waiver of sovereign immunity under the APA); Up State Fed. Credit Union v. Walker, 198 F.3d 372, 374 (2d Cir.1999) ("It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim is a prerequisite to subject matter jurisdiction."). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." Dorking Genetics v. United States, 76 F.3d 1261, 1263 (2d Cir.1996) (quoting FDIC v. Meyer, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

23
Lunney invokes the waiver of federal immunity in the APA, which provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702; Up State Fed. Credit Union, 198 F.3d at 375. The APA allows individuals to challenge the final actions of the military so long as the authority challenged was not exercised in the field in time of war or in occupied territory. 5 U.S.C. § 701(b)(1)(G); see also Ornato v. Hoffman, 546 F.2d 10, 14 (2d Cir.1976) (stating that the APA "applies to the [military] in peacetime").

24
The APA authorizes only a challenge to a "final" action of an "agency." 5 U.S.C. §§ 701(a), 704. Under the APA, an action is "final" insofar as it is not a "preliminary, procedural, or intermediate agency action or ruling"; a ruling may be final whether or not it may be subject to appeal or reconsideration "unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative." Id. § 704. The "core question" for determining finality is "whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." Dalton v. Specter, 511 U.S. 462, 470, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994) (quoting Franklin v. Massachusetts, 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992)).

25
An "agency" is defined in the APA as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency...." 5 U.S.C. § 701(b). "[T]he President is not an `agency' within the meaning of the APA," Dalton, 511 U.S. at 469, 114 S.Ct. 1719 (citing Franklin, 505 U.S. at 801, 112 S.Ct. 2767); so the APA does not allow courts to review the President's actions.

II

26
According to the district court, the Secretary of the Navy (as a deputy of the President) had discretion to choose a representative to receive the Medal and could decide whether to accept Lunney's claim that the Medal should be presented or transferred to Screcko Herceg Tonic, but "[t]he Secretary of the Navy's decision serve[d] `more like a tentative recommendation than a final and binding determination.'" Lunney v. United States, 2001 WL 1636965 at *3, 101 Civ. 0987(LMM), 2001 U.S. Dist. LEXIS 21178, at *8 (S.D.N.Y. Dec. 20, 2001) (quoting Dalton, 511 U.S. at 469, 114 S.Ct. 1719). Relying on the allegation in the complaint that President Clinton denied a request to have the Medal presented to Screcko Herceg Tonic, the district court concluded that President Clinton took the only "final" action as to Lunney's claim. In short, the district court held that it lacked jurisdiction because, although the Navy is an "agency," its actions were not "final," and although the actions of President Clinton were "final," the President is not an "agency." See id. 2001 WL 1636965 at *3-4, 2001 U.S. Dist. LEXIS 21178, at *7-8 ("President Clinton's denial of plaintiff's petition to have the Medal presented to Screcko [Herceg] Tonic is not subject to review by this Court under the APA.").

27
We agree with the district court that Congress has expressly delegated authority over the Medal to the President, and that the President is not an agency. But although we arrive at the same conclusion as the district court in regard to subject matter jurisdiction, we deviate from the district court's analysis.

28
The district court relied on Dalton v. Specter, 511 U.S. 462, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994), which held that certain actions of the President, which in that case concerned the closing of naval bases, were unreviewable under the APA. Dalton, however, is insufficient to dispose of the present case. The statutory scheme at issue in Dalton gave the President the power to accept or reject, whole, a report (prepared by the Secretary of Defense and endorsed by an independent base-closure commission) that listed bases to be closed. Id. at 464-65, 114 S.Ct. 1719. The parties in Dalton disputed whether the President had made the final decision, or whether the President's role in effect was to intercede or acquiesce in a final decision that Congress delegated to an agency. The Court ruled that Congress had expressly granted the final decision-making power to the President, to be exercised upon the President's receipt of an agency report in the nature of a recommendation. Id. at 470, 114 S.Ct. 1719. The Court acknowledged that "the President cannot pick and choose among bases, and must accept or reject the entire package offered by the Commission," but concluded that this fact was "immaterial": "[w]hat is crucial is the fact that `[t]he President, not the [Commission], takes the final action that affects' the military installations." Id. (quoting Franklin v. Massachusetts, 505 U.S. 788, 799, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992)) (alterations in original). The relevant inquiry is into the intent of Congress. See id. at 470, 474, 114 S.Ct. 1719.

29
Dalton is of limited utility in deciding the present case because there is no evidence that Congress intended to give the President continuing and unreviewable power over a Medal of Honor awarded and presented decades earlier by another President. The statutory scheme governing the Medal of Honor limits the President's discretion to a five year period following the "act or service justifying the award." 10 U.S.C. § 6250. So even assuming that President Clinton himself directed the Navy to deny Lunney's claim, that act of that President would not (standing alone) insulate the Navy's actions from judicial scrutiny. Lunney's decision to (unsuccessfully) lobby the President to intercede does not serve to make the President's decision the only "final" action affecting Lunney's claim.3

30
Dalton might in any event have controlled this case if Lunney were seeking only the ceremonial presentation of the Medal: Congress expressly conferred that power on President Roosevelt, who exercised it. The district court understood Lunney to seek nothing else, which is understandable because plaintiff's submissions are muddled on this point: While Lunney suggests that the relief he seeks "would be at no cost to the Government," since "the next of kin w[ould] accept a reproduction or duplicate and allow the Navy to retain the original for appropriate display at mutually agreeable museums and other prominent locations," the record also reflects a request for relief that includes "custody" and "deliver[y]." Thus, although the next of kin might forgo possession of the original Medal (and accept a replica of some kind that presumably would be uniquely cast), he would evidently assert a possessory right to control display of the original. Viewing the record in the light most favorable to plaintiff (as we must), we construe this claim to seek possession of the Medal, in the alternative to presentation. And to the extent that Lunney seeks possession, the district court's opinion (and Dalton) are insufficient to support the dismissal of this case.

31
The defendants argue that Lunney's complaint should be dismissed for lack of subject matter jurisdiction notwithstanding any claim for possession. According to defendants, even if the Navy's decision to retain possession of the Medal was a final agency action under the APA, the district court would nevertheless lack jurisdiction because (1) Lunney has no standing to bring this claim, and (2) the decision challenged by Lunney is one committed to agency discretion by law and is therefore unreviewable under the APA. We now turn to these issues.

III

32
Defendants argue that Lunney, as administrator of Tomich's estate, lacks standing to bring a claim on behalf of a purported next of kin, since Tomich's estate has never had (and does not claim for itself) any right to the Medal. In his reply brief and in response to questions at oral argument, Lunney suggests that if we perceive a standing problem, we should remand to the district court for substitution of Screcko Herceg Tonic as plaintiff under Rule 17(a). See Fed.R.Civ.P. 17(a) ("No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest[.]").

33
Lunney's standing is dubious, but for the following reasons, we decline to decide that question or to remand for substitution, and instead we hold (in section IV of this opinion) that this case must be dismissed because subject matter jurisdiction is lacking.

34
1. Rule 17(a) cannot be construed to extend subject matter jurisdiction. Fed. R.Civ.P. 82; Airlines Reporting Corp. v. S and N Travel, Inc., 58 F.3d 857, 861 n. 4 (2d Cir.1995) ("Rule 17(a) ... is a procedural rule which does not extend or limit the subject matter jurisdiction of a federal court."); 6A Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure § 1556, at 421 (stating that Rule 17(a) cannot confer jurisdiction where it does not otherwise exist). Where, as here, the court lacks subject matter jurisdiction, litigation over standing should not be sustained to try out various dubious candidates.

35
2. "A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal[.]" Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 20 (2d Cir.1997) (emphasis added); see id. at 21 (remanding under Rule 17(a) where "[t]he original complaint plainly gave defendants the particulars of the selling shareholders' claims, and the attempt to substitute the selling shareholders was made within a reasonable time"). The substitution of Screcko Herceg Tonic on remand would not be a mere formality, and would not settle the standing question. While he would seem to be the right person to vindicate his own claim to possession, his standing to challenge the Navy's possession of the Medal is highly questionable, and would raise a host of vexed questions for the district court, some of which are set out in the margin.4

36
3. The purpose of Rule 17(a) is "to insure against forfeiture and injustice." Fed.R.Civ.P. 17 Advisory Comm. Notes (1966). Because the claim here is defeated by jurisdictional problems other than standing (see section IV of this opinion), dismissal will not cause forfeiture or injustice, particularly since it is perfectly clear that, regardless of whether the named plaintiff is Lunney as Administrator, or Screcko Herceg Tonic, or Dragutin Herceg Tonic, the same engine will be driving the litigation, and the same arguments will be made.

37
We therefore consider the government's argument that the challenged action is committed to agency discretion by law.

IV

38
The APA is not an independent grant of subject matter jurisdiction. Your Home Visiting Nurse Servs., Inc. v. Shalala, 525 U.S. 449, 457-58, 119 S.Ct. 930, 142 L.Ed.2d 919 (1998); Califano v. Sanders, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Rather, it waives the federal government's sovereign immunity in actions brought under the general federal question jurisdictional statute, 28 U.S.C. § 1331. Califano, 430 U.S. at 105, 97 S.Ct. 980 (interpreting elimination of amount in controversy requirement under § 1331 as action by Congress "to confer jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate").

39
The APA embodies a "basic presumption of judicial review." Abbott Labs. v. Gardner, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). "This is `just' a presumption, however, ... and under § 701(a)(2) agency action is not subject to judicial review `to the extent that' such action `is committed to agency discretion by law.'" Lincoln v. Vigil, 508 U.S. 182, 190-91, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) (citing Block v. Community Nutrition Institute, 467 U.S. 340, 349, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984)). This limitation on the APA's waiver of immunity means that there is no jurisdiction if the statute or regulation said to govern the challenged agency action "is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (emphasis added). Therefore "§ 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based," Webster v. Doe, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), and requires dismissal when there is "no law to apply," Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

40
To the extent the complaint challenges final agency action denying possession of the Medal (or possessory rights to it), the complaint challenges the Navy's refusal to relinquish or share its own possessory rights. The plaintiff therefore must specify some statute or regulation that would limit the Navy's discretion in this matter. See 5 U.S.C. § 701(a)(2); Webster, 486 U.S. at 600, 108 S.Ct. 2047 (noting that "§ 701(a)(2) requires careful examination of the statute on which the claim of agency illegality is based" (emphasis added)); id. at 599-600, 108 S.Ct. 2047 ("[E]ven when Congress has not affirmatively precluded judicial oversight, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.") (emphasis added, citations and internal quotation marks omitted); Heckler, 470 U.S. at 834, 105 S.Ct. 1649 ("The danger that agencies may not carry out their delegated powers with sufficient vigor does not necessarily lead to the conclusion that courts are the most appropriate body to police this aspect of their performance. That decision is in the first instance for Congress, and [a court must] ... determine whether in this case Congress has provided [it] with `law to apply.'").

41
On appeal, the only statutes plaintiff cites for that purpose are: 5 U.S.C. § 701 (delineating exceptions to applicability of, and defining meaning of terms under, the APA); 28 U.S.C. § 1331 (providing for federal question jurisdiction); and 10 U.S.C. §§ 6241 and 6252 (giving the President discretion to award and present the Medal of Honor and power to prescribe regulations regarding the Medal of Honor and other military awards). None of these enactments furnishes a "meaningful standard against which to judge the [Navy's] exercise of discretion."5 Heckler, 470 U.S. at 830, 105 S.Ct. 1649. None even mentions the Navy. Plaintiff cites no applicable regulations whatsoever.

42
Even assuming (as Plaintiff apparently does) that an APA claim could be founded on something other than a statute or regulation,6 the cases cited in plaintiff's brief furnish no basis for the idea that the Navy's discretion in possessing a Medal of Honor is limited in any way. Plaintiff relies (for want of anything better) on internal Navy memoranda from the 1940s, which reflect the writers' belief that Tomich's next of kin might have some enforceable future right to the Medal. Thus, when the Medal was forwarded to the commander of the U.S.S. Tomich, a 1943 internal Navy memo recited that the Medal was "to be displayed on board in the status of a loan, to be recalled should a next of kin make a claim for same." And when the Medal was sent to Salt Lake City for display at the commemoration of the U.S.S. Utah there, the Navy advised the Governor that in the "improbable" event that a "relative" of Tomich made a claim on the Medal,

43
the Navy Department, as required by law, would be obliged to have the award returned, so that it could be delivered to the next of kin. The right to recall the award must also be reserved, should in the future a Navy vessel again bearing Tomich's name be commissioned.

44
These documents do not begin to satisfy plaintiff's burden of establishing the "law to apply" needed for a waiver of sovereign immunity under the APA. The authors and the recipients of these memoranda may have thought that there was a limitation on the Navy's power to possess; and they may have been right insofar as the President as commander-in-chief could quite possibly have directed delivery of the medal to a next of kin (or to anyone else, including some government agency or institution other than the Navy). Most likely, the memos reflect a sensible caution brought on by the authors' awareness that the situation was without known precedent. In any event, even assuming that these 1940s documents did purport to limit the Navy's discretion, a unilateral discretionary action of an agency itself does not limit agency discretion by furnishing "law to apply" under the APA. See Lincoln v. Vigil, 508 U.S. 182, 193-95, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) (rejecting arguments that agency's own statements, statements of Congress contained in legislative history of agency funding statutes, or even existence of fiduciary duty owed by agency to plaintiffs and others could serve to create legally enforceable rights against agency under the APA).7

45
Standing or no standing, the plaintiff in this action has not established subject matter jurisdiction. And lack of subject matter jurisdiction means that no one can have standing. We therefore see no reason to remand for the purpose of giving a hypothetical person a chance to materialize. While our dismissal does not foreclose the possibility that a next of kin might one day come forward and make arguments that could establish subject matter jurisdiction under the APA or some other statute, no such arguments have been made here, and we decline to speculate on what they might be. "Without jurisdiction, the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Ex Parte McCardle, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868).

46
Our conclusion that the district court lacks jurisdiction does not relegate the Medal to limbo. Although no next of kin was located prior to the December 7, 1946 statutory limit on the presentation of a Medal of Honor awarded for heroism at Pearl Harbor (see 10 U.S.C. § 6250), the Medal was in fact presented to the U.S. Navy as Tomich's representative. And a grateful nation has kept it on display almost continuously since then — first on board a warship named for Tomich, then at an exhibit commemorating the ship on which he died, and now at the U.S. Navy Museum, Washington, D.C.

CONCLUSION

47
For the foregoing reasons, we affirm the judgment of the district court dismissing plaintiff's claims for lack of subject matter jurisdiction.

Notes:

*
The Honorable David G. Trager, District Judge of the United States District Court for the Eastern District of New York, sitting by designation

2
Plaintiff alleges that Tomich's is the only Medal of Honor in this century to be posthumously awarded but never presented to a next of kin. Notwithstanding the credit owed plaintiff's allegations in a jurisdictional challenge based on the pleadings, we recognize that a Medal of Honor was awarded to Private George Watson (for heroism in the Pacific during World War II), and that in the absence of any known next of kin, his medal is lodged at the U.S. Army Quartermaster Museum, Fort Lee, Virginia

3
Lunney's allegation, cited by the district court, that he had "unsuccessfully petitioned the Commander in Chief and has exhausted all other administrative remedies,"see Lunney, 2001 WL 1636965 at *2, 3-4, 2001 U.S. Dist. LEXIS 21178, at *5, *8, leaves unclear what action (if any) President Clinton actually took, or whether any action taken was final in nature.

4

• If a purported "next of kin" did have standing, would the next of kin for these purposes always be the person designated as such by the serviceman? (That would be John Tonich.) If so, does a living heir of that person have standing? (That would be Dragutin Herceg Tonic.) Can the next of kin be the designee of the heir of the person who was designated? (That would be Screcko Herceg Tonic.)
• Since the serviceman's spouse was alive at the time of his death (she lived another 40 years), can anyone else be deemed to have been next of kin? Lunney surmises that the marriage was "arranged" and "unhappy." But that is not for him to say. True, Tomich seems to have been out of touch with her; then again, there is no sign he was in touch with his cousin John either.
• If the widow was the true next of kin, and she is dead, do her heirs have standing? If so, who are they?
• What law governs the standing question? There is no federal law saying who is next of kin for the purpose of a Navy Medal of Honor. (Under a regulation governing Army decorations, neither John, nor his offspring would have standing as "next of kin," see 32 C.F.R. §§ 578.25a(b), 578.3(f).) Does the district court apply the law of New York or the testamentary law of the Federation of Bosnia and Herzegovina? Do different provinces of that country have different surrogates? What court or jurisdiction or law governs Prolog? It is worth noting, of course, that Tomich left that venue in 1912.
• In the absence of a known next of kin of the requisite consanguinity, might the estate of the serviceman have standing superior to any other person or party?
• Can a claim on the Medal be brought indefinitely by Tomich's blood relatives, or would some statute of limitations bar a claim concerning a medal presented more than 50 years ago?

5
We also note that the APA's "arbitrary and capricious" standard,see 5 U.S.C. § 706(2)(a), cannot be sufficient by itself to provide the requisite "meaningful standard" for courts to apply in evaluating the legality of agency action. See Heckler, 470 U.S. at 829-30, 105 S.Ct. 1649. If agency actions could be challenged as "arbitrary and capricious," without reference to any other standard, then § 701(a)(2)'s limitation on APA review would amount to no limitation at all, and nothing would ever be "committed to agency discretion by law."

6
Cf. Aetna Casualty & Surety Co. v. United States, 71 F.3d 475, 479 (2d Cir.1995) (remanding to allow plaintiff an opportunity to amend his complaint to state a claim under the APA where the legal duty sought to be enforced was derived from a contractual right of subrogation); but see Heckler, 470 U.S. at 834, 105 S.Ct. 1649 (stating that decision as to whether courts may review agency action under the APA is "in the first instance for Congress" (emphasis added)).

7
The Supreme Court has identified other kinds of discretionary agency actions that fall within the "committed to agency discretion by law" exception to the APA's general waiver of sovereign immunity. For example,Heckler v. Chaney characterized an agency's decision not to institute enforcement proceedings to be presumptively unreviewable, see 470 U.S. at 831, 105 S.Ct. 1649; ICC v. Brotherhood of Locomotive Engineers held that a refusal to grant reconsideration of an action because of material error was committed to agency discretion, 482 U.S. 270, 282, 107 S.Ct. 2360, 96 L.Ed.2d 222 (1987); and Webster v. Doe ruled that a decision by the Director of Central Intelligence to terminate an employee in the interest of national security was unreviewable under the APA, see 486 U.S. at 599-601, 108 S.Ct. 2047. In each case, the plaintiff claimed that some specific statute limited the agency's discretion to act as it did, which is more than Lunney has done here.