Teruyo NISHIBAYASHI, Plaintiff,

v.

Gordon R. ENGLAND, Secretary,
Department of the Navy,
Defendant.

No. CIV.04–00248 ACK/LEK.

United States District Court,
D. Hawai'i.

Jan. 19, 2005.

Teruyo Nishibayashi, Okinawa, Japan, Pro se.

Harry Yee, Office of the United States Attorney, Honolulu, HI, for Navy, Department of the, United States of America, defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

KAY, District Judge.

### BACKGROUND

**I. Factual History**

Teruyo Nishibayashi ("Plaintiff") is a Japanese citizen who lives and works on Okinawa, Japan. Plaintiff is employed under a contract between the United States Government and the Government of Japan that provides for employees, funded by the Japanese Government, to provide administrative and logistical support to the United States Forces based in Japan. (Master Labor Contract Number DA–92–557–FEC–28000, as amended, (effective October 1, (1957))) ("MLC"). Plaintiff works for the United States Marine Corps Base at Camp Smedley D. Butler, Okinawa ("Camp Butler").

On April 4, 1989, Plaintiff received an initial, 60–day, limited-term appointment under the MLC as a BWT1–4, Personnel/Manpower Coordinating Clerk and was assigned to Camp Butler. She later received a one-month extension of her employment term, not to exceed June 30, 1989. Following the extension, effective July 1, 1989, Plaintiff's employment status was changed from "limited-term" to "permanent" and she was promoted to the position of BWT1–6, Real Property Specialist.

On August 1, 1989, she was transferred from the Facilities Engineer Division–Environmental Branch to the G–4 Division–Safety Branch, both within Camp Butler. This transfer was initially scheduled to last up to two (2) years. Plaintiff alleges that she requested that her supervisor, Mr. Joseph E. Vogel, change the action from a "transfer" to a "detail" to ensure that she would return after the two-year period and that Mr. Vogel told Plaintiff to stay out of the matter. (Compl. at 5). Plaintiff alleges that "Mr. Vogel abused his authority and wrongfully transferred Plaintiff for his own interest" and that "[h]is radical discriminatory animosity had been secretly expressed to Plaintiff." (Compl. at 6).

On December 1, 1993, Plaintiff was promoted to BWT1–9, Chemist. On August 21, 2001, Plaintiff's supervisors in the Safety Division submitted a personnel action request to the Camp Butler Civilian Human Resources Office, Japanese National Labor Branch, requesting reassignment of Plaintiff's position from a BWT1–9, Chemist to a BWT1–9, Scientific Advisor. Thus, a desk audit was conducted of Plaintiff's position description and resulted in a rewrite of Plaintiff's task list to accurately reflect the duties and responsibilities Plaintiff performed. However, Plaintiff claims that Ms. Joyce Shingaki, Class and Wage Technician/Classifier in the Civilian

Human Resources Office, deleted a large portion of what was included in the original task list. (Compl. at 7). Plaintiff further alleges that Ms. Shingaki then forwarded the list to the Safety Division for its signature as the requestor even though the list should have been prepared by the requesting agency. (Compl. at 7–8). Plaintiff attached to her Opposition to Defendant's Motion to Dismiss an e-mail correspondence from her supervisor Mr. Charles E. Roberts to Ms. Shingaki indicating that he received the revised task list and that the list did not reflect the full scope of the duties that Plaintiff performed. (Opp'n to Def.'s Motion to Dismiss Ex. 8). Ms. Shingaki replied that Mr. Roberts did not have to use the revised list if he felt uncomfortable using it. (Opp'n to Def.'s Motion to Dismiss Ex. 8).

It was determined that the position Plaintiff occupied did not support a BWT1–9, Chemist or Scientific Advisor designation. Consequently, the Civilian Human Resources Office recommended that Plaintiff's position be reclassified as a Safety Program Administrator and downgraded from a BWT1–9 to BWT1–6. Plaintiff argues that the grading did not reflect the more complex tasks that her position occasionally required. (Compl. at 8–9). Plaintiff contends that this was "deliberate systematic attack on Plaintiff's specific job" because other positions throughout Camp Butler could have been similarly downgraded but were not. (Compl. at 8).

On February 5, 2003, Plaintiff's supervisor Mr. Roberts recommended that the downgrade occur after the position was vacated and refilled so as not to affect Plaintiff. (Compl. at 9). Plaintiff alleges that this has been done with regard to other positions at Camp Butler and cites an incident in 2000 that involved the reclassification of engineering positions. (Compl. at 9). Plaintiff alleges that all the employees in that reclassification were male and that none were downgraded based on the reclassification. (Complaint at 10). Thus, she argues this demonstrates sexual discrimination.

On February 14, 2003, Plaintiff filed a grievance, pursuant to Chapter 12 Grievance Procedures of the Master Labor Contract regarding the proposed reclassification and downgrade. The Master Labor Contract allows an employee to officially state dissatisfaction with any aspect of his/her employment and receive a decision from the grievance authority. (Whitaker Decl. at 3). Plaintiff went through four grievance and appeal levels contesting the proposed actions. On February 27, 2003, Plaintiff filed a "Second–Step" grievance appealing the "First–Step" decision. On March 24, 2003, she filed a "Third–Step" grievance appealing the "Second–Step" decision with the office of Mr. Richard C. Whitaker, Assistant Chief of Staff/Comptroller at Camp Butler.

On March 27, 2003, Mr. Whitaker, pursuant to the Master Labor Contract, appointed a Grievance Advisory Committee to conduct a hearing to determine the issues and facts pertaining to Plaintiff's grievance and to provide a recommended course of action. The Committee provided a report on April 7, 2003. Plaintiff alleges that the Grievance Advisory Committee recommended that Mr. Richard C. Whitaker, Assistant Chief of Staff/Comptroller at Camp Butler, sustain Plaintiff's grievance. (Compl. at 10–11). She further claims that Mr. Whitaker ignored the Committee's recommendation. (Compl. at 11). On April 10, 2003, Mr. Whitaker corrected the Reclassification and Change to a lower grade action which reclassified Plaintiff from Chemist, BWT1–9 to Safety Program Administrator, BWT1–6. The corrected action reclassified Plaintiff to Engineering Technician, BWT1–7. Plain-

tiff claims that this designation does not adequately reflect her skills or duties and that the United States civilian who had previously held her position was classified as professional while she was classified as a non-professional. (Compl. at 14). She concludes that this is the result of discrimination against her national origin. (Compl. at 16). On April 17, 2003, Plaintiff filed a "Fourth–Step" grievance to the final decision authority. On June 17, 2003, Mr. Whitaker's decision was upheld.

Finally, on April 19, 2004, Plaintiff filed a complaint against Gordon R. England, Secretary, Department of the Navy, alleging discrimination based on her sex and national origin. Plaintiff requests a judgment indicating that her rights have been violated, permanent reassignment to Basic Wage Table 1–9 Scientific advisor or Chemist, to have all references to her allegedly wrongful downgrade removed from her record, back pay, compensatory damages, and punitive damages in the amount of two-million dollars.

## II. *Procedural History*

On April 19, 2004, Plaintiff filed her Complaint alleging discrimination based on her sex and national origin.

On July 21, 2004, Defendant filed an Answer to Plaintiff's Complaint.

On October 7, 2004, Plaintiff filed a Scheduling Conference Statement, and on October 8, 2004, Defendant filed a Scheduling Conference Statement.

On October 13, 2004, Defendant filed a Motion to Dismiss and attached a Declaration of Richard C. Whitaker, Assistant Chief of Staff/Comptroller at Marine Corps Base, Camp Smedley D. Butler, Okinawa, Japan.

On October 18, 2004, a Rule 16 Scheduling Conference was held.

On October 21, 2004, Magistrate Judge Leslie E. Kobayashi filed a Rule 16 Scheduling Order.

On December 28, 2004, Plaintiff filed her Opposition to Defendant's Motion to Dismiss.

## STANDARD

### I. *Dismissal for Lack of Subject Matter Jurisdiction*

"A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir.1996). On a Rule 12(b)(1) motion, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988). "Once the moving party [converts] the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1040 n. 2 (9th Cir.2003).

"The requirement that the nonmoving party present evidence outside his pleadings in opposition to a motion to dismiss for lack of subject matter jurisdiction is the same as that required under Rule 56(e) that the nonmoving party to a motion for summary judgment must set forth specific facts, beyond his pleadings, to show that a genuine issue of material fact exists." *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1559 (9th Cir.1987). Thus, the moving party "should prevail only if the material jurisdictional facts are not in dispute and the moving

party is entitled to prevail as a matter of law." *Casumpang v. Int'l Longshoremen's & Warehousemen's Union*, 269 F.3d 1042, 1060–61 (9th Cir.2001).

## II. Dismissal for Failure to State a Claim Upon Which Relief Can Be Granted

 Under Federal Rules of Civil Procedure, Rule 12(b)(6), in deciding a motion to dismiss for failure to state a claim upon which relief can be granted, this Court must accept as true the plaintiff's allegations contained in the Complaint and view them in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Wileman Bros. & Elliott, Inc. v. Giannini*, 909 F.2d 332, 334 (9th Cir.1990); *Shah v. County of Los Angeles*, 797 F.2d 743, 745 (9th Cir.1986). Thus, the Complaint must stand unless it appears beyond doubt that the plaintiff has alleged no facts that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). A Complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri*, 901 F.2d at 699, *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533–34 (9th Cir.1984).

In essence, as the Ninth Circuit has stated, "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." *De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir.1978), cert. denied, 441 U.S. 965, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979). The Court must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiff's claims. *Id.*

## III. Pro Se Litigant

 When a plaintiff proceeds pro se the pleadings must be read more liberally than pleadings drafted by a lawyer. *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, "a pro se litigant is not excused from knowing the most basic pleading requirements." *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1107–08 (9th Cir.2000) (citations omitted).

## DISCUSSION

 "It is well settled that the United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued." *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir.1985) (citing *United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940)). Such a waiver cannot be implied, but must be unequivocally expressed. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Gilbert*, 756 F.2d at 1458. Dismissal of an action is required where the United States has not consented to suit. *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir.1982). Thus, consent is a prerequisite for jurisdiction. *See United States v. Mitchell*, 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Gilbert*, 756 F.2d at 1458. Furthermore, the bar of sovereign immunity cannot be avoided by simply naming officers and employees of the United States as defendants. *Gilbert*, 756 F.2d at 1458 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)).

In the case at hand, Plaintiff claims that this Court has jurisdiction under 28 U.S.C. § 1332(a)(2); the Equal Employment Opportunity Act of 1964, as amended; and MARFORJO P12000.1.

## I. *28 U.S.C. § 1332(a)(2)—Diversity Jurisdiction*

The constitutional grant of diversity jurisdiction extends "to Controversies ... between Citizens of different States ... and between a State, or Citizens thereof, and foreign States, Citizens, or Subjects." U.S. Const., Art. III, § 2. This jurisdiction is conferred on the federal courts by section 1332 of the Judicial Code. 28 U.S.C. § 1332. Section 1332(a)(2) states that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a State and citizens or subjects of a foreign state." 28 U.S.C. § 1332(a)(2). Plaintiff premises her jurisdictional argument on the diversity jurisdiction conferred by section 1332. However, Plaintiff's suit is directed against the Secretary of the Navy in his official capacity and is thus essentially a suit against the United States. *Gilbert,* 756 F.2d at 1458 (citing *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). It is well established that the bar of sovereign immunity cannot be circumvented by simply naming officers and employees of the United States as defendants. *Id.* Thus, because section 1332 is not in itself a waiver of sovereign immunity, Plaintiff must demonstrate that the claim being asserted is covered by a specific statutory authorization to sue the United States.

## II. *Title VII*

Plaintiff claims that the Equal Employment Opportunity Act of 1964 grants this Court jurisdiction over her case. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (2004). However, the express language of the statute excludes its application to this case. 42 U.S.C. § 2000e–16(a) prohibits discrimination based on race, color, religion, sex, or national origin in "[a]ll personnel actions affecting employees or applicants for employment (*except with regard to aliens employed outside the limits of the United States* ) in military departments ...." 42 U.S.C. § 2000e–16(a)(effective July 7, 2004) (emphasis added). Furthermore, the United States Supreme Court has held that Title VII does not apply extraterritorially to regulate employment practices of United States employers outside the United States. *See Equal Employment Opportunity Commission v. Arabian American Oil Co.,* 499 U.S. 244, 259, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991); *Arno v. Club Med Inc.,* 22 F.3d 1464, 1472 (9th Cir.1994). Although Congress subsequently amended Title VII in the Civil Rights Act of 1991 to extend Title VII's protections to United States citizens working outside of the United States, they chose not to extend the law as to aliens employed outside of the United States. *See* Pub.L. No. 102–166, 105 Stat. 1071, § 109(c) (November 21, 1991).

Plaintiff also bases her jurisdictional argument on 29 C.F.R § 1614.103 (current through January 5, 2005) which implements the provisions of Title VII. However, like the statute itself, the regulation expressly states that it does not apply to "[a]liens employed in positions, or who apply for positions, located outside the limits of the United States." 29 C.F.R § 1614.103(d)(4) (current through January 5, 2005). Thus, the Court finds that it lacks jurisdiction under Title VII and its implementing regulations.

## III. *U.S. Marine Corps Forces Japan Order P12000.1*

Finally, Plaintiff argues that this Court has jurisdiction based on an administrative order promulgated by defendant. United States Marine Corps Forces Japan Order P12000.1 establishes personnel instructions

covering Japanese national civilian employees. (Decl. of Richard. C. Whitaker at 4, ¶ 30). Chapter 16 (Equal Employment Opportunity Chapter) of the Order provides in a policy statement that "the principles of U.S. EEO laws … are appropriate for application to non-U.S. citizen employees of the U.S. Marine Corps in Japan." (MARFORJO P12000.1, Chapter 16 § 16002). § 16003 states that "[i]nstallations will retain overall responsibility for carrying out an effective EEO program and maintain a working environment free from discrimination and sexual harassment." (MARFORJO P12000.1, Chapter 16 § 16003).

▮ The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq. (2004), waives sovereign immunity by stating that an action brought by a person suffering legal wrong because of agency action shall not be dismissed on the ground that it is against the United States or that the United States is an indispensable party. 5 U.S.C. §§ 702 (2004).[1] The APA allows individuals to challenge final[2] actions of the military so long as the authority challenged was not exercised in time of war or in occupied territory. 5 U.S.C. § 701(b)(1)(G) (defining agency); *see also Lunney v. United States*, 319 F.3d 550, 554, (2d Cir.2003) (citations omitted).

▮ Although the APA expressly waives sovereign immunity, the Act does not provide an independent basis for subject matter jurisdiction. *See Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 457–58, 119 S.Ct. 930, 142 L.Ed.2d 919 (1999); *Califano v. Sanders*, 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, the general federal question statute, 28 U.S.C. § 1331(a), gives the district courts original jurisdiction over every civil action that "arises under the Constitution, laws, or treaties of the United States." The reference in § 1331(a) to the "laws" of the United States is interpreted as including Acts of Congress or administrative regulations. 13B Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3563 at 51 (3d ed.1998). Thus, Plaintiff must rely on, 28 U.S.C. § 1331, the general federal question jurisdictional statute to establish jurisdiction and on the APA to overcome the bar of sovereign immunity.

▮ In the case at hand, Plaintiff seeks review of an internal decision to reclassify her position from a BWT1–9, Chemist to a BWT1–7, Engineering Technician (Environmental). Plaintiff alleges that the reclassification was discriminatory in nature,

---

1. § 702 provides, "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to seek judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party."

2. § 704 of the APA provides for judicial review of "final agency action for which there is no other adequate remedy in a court." Un-

der the APA, an action is final so long as it is not a "preliminary, procedural, or intermediate agency action or ruling." 5 U.S.C. § 704. The "core question" for determining finality is " whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Dalton v. Specter*, 511 U.S. 462, 470, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992)). In the case at hand, the Defendant does not argue that Plaintiff did not exhaust all administrative remedies available to her. (Def.'s Mot. to Dismiss at 3 stating that the final decision in the Plaintiff's grievance appeal was made.)

and thus, violated United States Marine Corps Forces Japan Order P12000.1, Chapter 16 § 16002 which states that "the principles of U.S. EEO laws ... are appropriate for application to non-U.S. citizen employees of the U.S. Marine Corps in Japan." This Court must determine whether such an internal reclassification is appropriate for its review.

The Court begins by acknowledging that the APA embodies a "basic presumption of judicial review," *Abbott Labs. v. Gardner,* 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and further recognizing that "courts often review cases in which military officials are alleged to have violated their own regulations." *Bledsoe v. Secretary of the Navy,* 839 F.2d 1357, 1360 (9th Cir.1988). However, APA section 702 states that nothing within the Act "(1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or *impliedly* forbids the relief which is sought." (Emphasis added).

 In the case at hand, the Court cannot ignore the fact that Congress has comprehensively addressed the issue of employment discrimination in the military departments in Title VII and that Congress chose to explicitly deny the relief afforded by Title VII to "aliens employed outside the limits of the United States." 42 U.S.C. § 2000e–16(a) (2004). Furthermore, the United States Supreme Court has held that a Title VII action against the federal government is the exclusive judicial remedy for discrimination in federal employment. *Brown v. General Services Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Brazil v. United States Dept. of the Navy,* 66 F.3d 193, 197–98 (9th Cir.1995). Although the Supreme Court has created narrow exceptions to *Brown,* the rule is that "[s]o long as Congress' failure to provide money damages, or other significant relief, has not been inadvertent, courts should defer to its judgment, because 'Congress is the body charged with making the inevitable compromises required in the design of a massive and complex ... program.'" *Kotarski v. Cooper,* 866 F.2d 311, 312 (9th Cir. 1989) (quoting *Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)). The Court finds that Congress comprehensively addressed the issue of discrimination in federal employment in Title VII, Congress chose to expressly deny the protection afforded by Title VII to aliens employed outside of the United States, and the United States Supreme Court has held that Title VII is the exclusive remedy for discrimination in federal employment. Thus, this Court holds that it lacks jurisdiction to entertain Plaintiff's complaint under the APA and the United States Marine Corps Forces Japan Order P12000.1.[3]

### CONCLUSION

For the forgoing reasons, the Court GRANTS Defendant's Motion to Dismiss, without prejudice. The Court holds that it lacks subject matter jurisdiction under 28 U.S.C. § 1332(a)(2); the Equal Employment Opportunity Act of 1964, as amended; and MARFORJO P12000.1.

IT IS SO ORDERED.

---

3. The Court notes that even if it were to find subject matter jurisdiction based on the general federal question statute, 28 U.S.C. § 1331(a), and the APA's waiver of sovereign immunity, the relief sought by Plaintiff would be unavailable because the APA expressly limits such waiver to actions seeking relief *other* than money damages. 5 U.S.C. § 702 (2004).