Lawrence R. ESTRELLA, Plaintiff,

v.

Fredrick MENIFEE, Warden; Kathleen Hawk–Sawyer, Director; John Ashcroft, United States Attorney General; Harrell Watts, Administrator, National Appeals Board; Mickey Ray, Regional Director, (N.E.), Bureau of Prisons; AL Welch, Unit Manager, Unit–FB, Brian Barrett, Unit Case Manager, FB; and John Gushew, Unit Counselor, FB, Defendants.

No. 02 Civ. 6114 SAS.

United States District Court,
S.D. New York.

July 17, 2003.

See, also, 2003 WL 192177.

Lawrence R. Estrella, Otisville FCI, Otisville, NY, Pro se.

Danielle Gentin Stock, Assistant United States Attorney, New York City York, for Defendants.

**1.** Plaintiff's current conviction is for felony possession of a firearm but his prior criminal history includes convictions for assault and battery with a dangerous weapon and armed robbery and armed assault in a dwelling. Plaintiff argues that because his current conviction is not a "crime of violence," he should not be subjected to the section 4042(b) notification procedures based on his prior convictions, which he concedes likely fit the statutory criteria for crimes of violence. *See* Memorandum of Law in Support of Amended Complaint at 2, attached to plaintiff's Amended Complaint, Ex. A to the Declaration of

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiff seeks a declaratory judgment stating that the Bureau of Prisons ("Bureau") exceeded its statutory authority under section 4042(b) of Title 18, United States Code ("section 4042(b)") in implementing Program Statement 5110.15. Program Statement 5110.15 makes the notification procedures found in section 4042(b) applicable to any prisoner whose current offense of conviction is a "drug trafficking crime" or a "crime of violence" or whose criminal history, as determined by Bureau staff, includes a *prior* conviction for "drug trafficking" or a "crime of violence." [1]

Although plaintiff's projected release date is July of 2010, and he is therefore not yet subject to section 4042(b) notice, he is suing defendants in both their official and personal capacities for continuing to classify him as an inmate who will be subject to notification upon release.[2] Plaintiff claims that by doing so, defendants continue to violate his due process rights as well as his right to equal protection of the law, *see* Am. Cmpl. ¶ 13, and that by misapplying the law have caused plaintiff mental anguish, anxiety, harassment and annoyance, *see id.* ¶ 7. Plaintiff seeks money damages and injunctive relief to prevent defendants from continuing to cause him "irreparable harm."

Danielle A. Gentin, Assistant United States Attorney ("Gentin Decl.").

**2.** In his Amended Complaint, plaintiff alleges that once he put defendants on notice that they were misapplying the law in enforcing Program Statement 5110.15, they were no longer acting in their official capacities, but individually, in their personal capacities. *See* Amended Complaint for Declaratory Judgment and Injunctive Relief on a Federal Question, With Annoyance, Anxiety, Harrassment [sic], Punitive and/or Nominal Damages Sought ("Am.Cmpl.") ¶¶ 4, 7.

Defendants move to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment pursuant to Rule 56(c). Because plaintiff has failed to allege a viable *Bivens* action against defendants, his claims for damages and injunctive relief are dismissed. Furthermore, this Court has no subject matter jurisdiction over plaintiff's claim for declaratory relief. Accordingly, the merits of plaintiff's request for a declaratory judgment are not addressed and the claim is dismissed.

## I. BACKGROUND

### A. The Statutory Framework

Section 4042 creates a mandatory duty on the part of the Bureau to provide notice to the chief law enforcement officer of the state and of the relevant local jurisdiction prior to the release of a prisoner convicted of a "crime of violence." 18 U.S.C. § 4042(b). The statute provides, in relevant part, as follows:

b) Notice of release of prisoners.—(1) At least 5 days prior to the date on which a prisoner described in paragraph (3) is to be released on supervised release, or, in the case of a prisoner on supervised release, at least 5 days prior to the date on which the prisoner changes residence to a new jurisdiction, written notice of the release or change of residence shall be provided to the chief law enforcement officer of the State and of the local jurisdiction in which the prisoner will reside. Notice prior to release shall be provided by the Director of the Bureau of Prisons....

(2) A notice under paragraph (1) shall disclose—

(A) the prisoner's name;

(B) the prisoner's criminal history, including a description of the offense of which the prisoner was convicted; and

(C) any restrictions on conduct or other conditions to the release of the prisoner that are imposed by law, the sentencing court, or the Bureau of Prisons or any other Federal agency.

(3) A prisoner is described in this paragraph if the prisoner was convicted of -

(A) a drug trafficking crime, as that term is defined in section 924(c)(2); or

(B) a crime of violence (as defined in section 924(c)(3)).

18 U.S.C. § 4042(b). A "crime of violence" is defined by section 924(c)(3) to mean an offense that is a felony and -

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).

The Bureau has interpreted these provisions as mandating notice for any prisoner:

(1) whose current offense of conviction is a "drug trafficking crime" or a "crime of violence" ..., or

(2) whose criminal history, as determined by staff, in the exercise of professional judgment, includes a conviction for "drug trafficking" or a "crime of violence" ...

Program Statement 5110.15 § 9(b), Ex. B to the Gentin Decl.

### B. Plaintiff's Criminal History

Plaintiff is currently serving an eighteen-year sentence in Otisville, New York. In 1997, plaintiff was convicted of felony

possession of a firearm in violation of section 922(g) of Title 18 of the United States Code. *See* Defendants' Rule 56.1 Statement ¶¶ 1, 2.[3] Plaintiff was sentenced as an "armed career criminal" based on his prior convictions for assault and battery with a dangerous weapon and armed robbery and armed assault in a dwelling. *See id.* ¶¶ 3, 4.

Based on these prior convictions, which were deemed crimes of violence, the Bureau determined that notice of plaintiff's release to the appropriate law enforcement authorities is appropriate under section 4042(b). *See* Declaration of Roberta M. Truman, Assistant Regional Counsel in the Bureau's Northeast Regional Office ("Truman Decl.") ¶ 4. At each level of the administrative process, the Bureau rejected plaintiff's request to change his classification so that notice would not be triggered. *See Estrella v. Menifee,* No. 02 Civ. 6114, 2003 WL 192177, at *2 (S.D.N.Y. Jan. 27, 2003) (stating that plaintiff's argument limiting section 4042(b) to current offenses only was rejected at every administrative level available to him). The determination that Program Statement 5110.15 is applicable to an inmate is made at the inmate's initial classification and is reviewed every six months prior to the inmate's release. *See* Truman Decl. ¶ 5. *See also* 28 C.F.R. § 524.12(b) ("Staff shall conduct a program review for each inmate at least once every 180 days. When an inmate is within twelve months of the projected release date, a program review shall be conducted at least once every 90 days."). Therefore, under the regulatory scheme currently in effect, plaintiff's classification may be changed before his projected release date in July 2010.

**3.** Only those paragraphs of Defendants' Rule 56.1 Statement that were admitted by plaintiff

## II. MOTION TO DISMISS STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002). Courts may not consider matters outside the pleadings but may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings. *See id.* at 152–53.

At the motion to dismiss stage, the issue " 'is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Phelps v. Kapnolas,* 308 F.3d 180, 184–85 (2d Cir.2002) (per curiam) (quoting *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998)). Therefore, the task of the court in ruling on a Rule 12(b)(6) motion is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Pierce v. Marano,* No. 01 Civ. 3410, 2002 WL 1858772, at *3 (S.D.N.Y. Aug. 13, 2002) (quoting *Saunders v. Coughlin,* No. 92 Civ. 4289, 1994 WL 88108, at *2 (S.D.N.Y. Mar. 15, 1994)).

## III. DISCUSSION

### A. Plaintiff's *Bivens* Claim

### 1. Lack of a Constitutional Violation

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 396, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized a cause of action against feder-

are cited herein.

al officials for conduct violating the United States Constitution. "A *Bivens* claim can be brought as an allegation that a constitutional injury arose out of the actions of federal agents—regardless of the nature of the relief sought." *Bunn v. Conley,* 309 F.3d 1002, 1009 (7th Cir.2002) (citing *Farmer v. Brennan,* 511 U.S. 825, 851, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (vacating the dismissal of a prisoner's *Bivens* action in which the prisoner sought injunctive relief)). However, *Bivens* claims are brought against federal officials in their individual, not official, capacity. While the Amended Complaint asserts claims against the defendants in their individual capacities, because defendants were functioning as Bureau personnel in applying Program Statement 5110.15, plaintiff's claims are, in actuality, brought against defendants in their official capacity. Moreover, plaintiff has failed to plead a constitutional violation.

■ Plaintiff claims that the actions of defendants in continuing to classify him as a prisoner subject to section 4042(b) notice violate his due process rights and his right to equal protection of the law. *See, e.g.,* Am. Cmpl. ¶ 13. To state a due process claim, plaintiff must have a legal entitlement, right or liberty interest protected under federal or state law. *See Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest and does not invoke the procedural protections of the due process clause). *See also Rem v. United States Bureau of Prisons,* 320 F.3d 791, 794 (8th Cir.2003). Plaintiff's due process claim fails because he does not have a protected liberty interest in his reputation alone or in his classification as a prisoner subject to notification. *See id.* ("Notification alone does not constitute a change in legal status that implicates a liberty interest."). Nor can plaintiff argue that his right to privacy

will be violated upon the dissemination of the information required by section 4042(b)(2). Most, if not all, of the information to be included in the notice are matters of public record (prisoner's name, prisoner's criminal history). And all of the information will only be sent to state and local law enforcement agencies. Under these circumstances, plaintiff cannot credibly argue that disclosure of the limited information required by section 4042(b) will violate his right to privacy. *See Doe v. City of New York,* 15 F.3d 264, 268 (2d Cir.1994) ("Certainly, there is no question that an individual cannot expect to have a constitutionally protected privacy interest in matters of public record.") (citing Supreme Court cases). Therefore, plaintiff's due process claim fails as a matter of law.

■ Plaintiff's equal protection claim fares no better. The Equal Protection Clause provides that "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Successful equal protection claims may be brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *See Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). However, plaintiff does not allege that defendants treated him differently than other similarly situated inmates, nor does he allege any other basis for an equal protection claim. *See Pyke v. Cuomo,* 258 F.3d 107, 110 (2d Cir.2001) ("[A] plaintiff who ... alleges an express racial classification, or alleges that a facially neutral law or policy has been applied in an intentionally discriminatory race-based manner, or that a facially neutral statute or policy with an adverse effect was motivated by discriminatory animus, is

not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection."). In addition, "[u]nless § 4042 trammels fundamental personal rights or involves a suspect class, the statute need only be rationally related to a legitimate governmental goal." *Rem*, 320 F.3d at 795. Because prisoners convicted of violent crimes are not a suspect class, *see Higgins v. Carpenter*, 258 F.3d 797, 799 (8th Cir.2001) (per curiam), and because no fundamental personal right is involved, rational basis review applies.

 Section 4042(b) was enacted as part of the Violent Crime Control and Law Enforcement Act of 1994 (the "Act"). Among other things, the Act was intended to expand and improve cooperative efforts between law enforcement agencies and to enhance public safety. *See* H.R. 3355, 103rd Cong. § 1002 (1993).[4] Applying rational basis review, I find that section 4042(b) is rationally related to the government's interest in promoting public safety. *Cf. Martinez v. A.M. Flowers*, 164 F.3d 1257, 1261 (10th Cir.1998) ("[W]e conclude that the regulation's treatment of inmates with prior convictions for violent crimes is rationally related to the legitimate governmental end of preventing the early release of potentially violent inmates."). Accord-

ingly, plaintiff has failed to make out an equal protection claim. Having failed to allege a constitutional violation, plaintiff's *Bivens* claim is dismissed for failure to state a claim upon which relief may be granted.[5] *See* Fed.R.Civ.P. 12(b)(6).

## 2. Qualified Immunity

 Assuming, *arguendo*, that plaintiff has adequately alleged a violation of his constitutional rights, defendants would still be dismissed from this lawsuit under the doctrine of qualified immunity. "The primary goal of qualified immunity is to permit government officials to act in areas of legal uncertainty without undue fear of subsequent liability." *Hanrahan v. Doling*, 331 F.3d 93, 98 (2d Cir.2003). Accordingly, "[p]ublic officials enjoy immunity from suit for damages ... for acts undertaken in their official capacity, unless their conduct violates clearly established constitutional rights of which an objectively reasonable official would have known." *Harhay v. Town of Ellington Bd. of Educ.*, 323 F.3d 206, 211 (2d Cir.2003) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

 The qualified immunity analysis is a three-step inquiry that generally should be done in sequential order. *See Harhay*, 323 F.3d at 211. The first step is

---

**4.** H.R. 3355 became Public Law No. 103–322 on September 13, 1994.

**5.** As an alternative ground, Director Hawk–Sawyer and Attorney General John Ashcroft can be dismissed for lack of personal involvement. Hawk–Sawyer's supervisory position is an insufficient basis upon which to raise a *Bivens* claim. *See Tejeda v. Reno*, No. 00 Civ. 6338, 2000 WL 1280969, at *3 (S.D.N.Y. Sept. 11, 2000) ("The fact that defendant Kathleen Hawk Sawyer ultimately supervises those persons who allegedly violated petitioner's constitutional rights is not enough to substantiate a *Bivens* claim against her."). Moreover, the Attorney General is immune from suit because an action against him is essentially a

suit against the United States and is therefore barred by the doctrine of sovereign immunity. *See id.* ("This argument is even stronger when applied to defendant [Attorney General]."). Plaintiff concedes as much in his opposition papers wherein he states that defendants Ashcroft and Hawk–Sawyer "were not meant to be inclusive to, nor alleged as defendants under" *Bivens*. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss/Or in the Alternative for Summary Judgment at 2. Whether defendants Harrell Watts and Mickey Ray can be similarly dismissed for lack of personal involvement, an issue not addressed in defendants' moving papers, remains uncertain.

determining whether plaintiff has alleged a violation of a constitutional right. *See id.* As stated above, for the limited purposes of this analysis, it is presumed that he has. The next step is to consider whether the right that was violated was clearly established at the time of the conduct. In evaluating whether a right is clearly established, courts "look to both 'the clarity of the law establishing the right allegedly violated' as well as 'whether a reasonable person, acting under the circumstances then confronting a defendant, would have understood' that his actions were unlawful." *Hanrahan,* 331 F.3d at 98 (quoting *Vega v. Miller,* 273 F.3d 460, 466 (2d Cir. 2001)). Thus, courts consider whether a violated right was clearly established "from the perspective of the defendant at the time of the challenged conduct." *Id.* *See also Saucier v. Katz,* 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). Finally, if plaintiff had a clearly established, constitutional right that was violated, he must then demonstrate that the actions of the defendants were not objectively reasonable. *See Harhay,* 323 F.3d at 211.

Here, plaintiff fails the second and third prongs of the qualified immunity analysis. In continuing to classify plaintiff as a prisoner subject to section 4042(b) notice, defendants were relying on Program Statement 5110.15 which directs that a prisoner's prior convictions for crimes of violence be taken into account. Section 4042(b) is silent as to whether prior convictions should be considered. Therefore,

without a directive from the Second Circuit stating otherwise, Program Statement 5110.15 is a presumptively valid interpretation of the statute for purposes of qualified immunity. *See Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) ("For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violated that right.'") (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). Thus, if a constitutional right was indeed violated by defendants, such right could not possibly have been clearly established at the time of the offending conduct given the absence of a binding court decree invalidating the Bureau's interpretation of section 4042(b) as stated in Program Statement 5110.15. Defendants are therefore dismissed from this lawsuit on the basis of qualified immunity.[6]

Because injunctive relief is inappropriate in the absence of a continuing constitutional violation, plaintiff's request for injunctive relief is denied. *See Al–Alamin v. Gramley,* 926 F.2d 680, 685 (7th Cir. 1991) ("When there is no continuing violation of federal law, injunctive relief is not part of a federal court's remedial powers.") (citing *Green v. Mansour,* 474 U.S. 64, 71, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)).

**B. Declaratory Judgment**

▮ Plaintiff's Amended Complaint, construed liberally, seeks a declaratory judgment stating that the Bureau's release notification policy as set forth in Program Statement 5110.15 exceeds the Bureau's statutory authority under section 4042(b). The Declaratory Judgment Act provides

---

**6.** Granting defendants qualified immunity finds further support in the statute which states: "The United States and its agencies, officers, and employees shall be immune from liability based on good faith conduct in carrying out this subsection and subsection (b)." 18 U.S.C. § 4042(c).

that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The declaratory judgment statute does not, however, confer jurisdiction on the Court. *See Fleet Bank, Nat. Ass'n v. Burke,* 160 F.3d 883, 886 (2d Cir.1998) (citing *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194 (1950)).

Because the Declaratory Judgment Act does not confer independent jurisdiction, plaintiff's underlying claim must "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 ("section 1331"). There are two ways in which the underlying claim can satisfy the jurisdictional requirements: (1) a *Bivens* action against the prisoner official responsible for actually sending the notice; or (2) a claim against the Bureau under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq. See Bunn,* 309 F.3d at 1009.

 Plaintiff's *Bivens* claim against the current defendants has already been dismissed for lack of a constitutional violation. Given plaintiff's release date of 2010, and the chance that he may be transferred to another facility before then, any subsequent *Bivens* claim brought before plaintiff's notice becomes imminent would not be ripe for adjudication because the identity of the official responsible for making such notice would not be known. There-

fore, plaintiff must resort to the APA if his declaratory judgment action is to survive.[7]

### C. Administrative Procedure Act

 The Bureau of Prisons is part of the Department of Justice and is therefore undeniably an "agency" for purposes of the APA. *See White v. Henman,* 977 F.2d 292, 293 (7th Cir.1992) (cited in *Bush v. Pitzer,* 133 F.3d 455, 457 (7th Cir.1998)). Although plaintiff does not name the Bureau as a defendant, when read liberally, his Complaint can be construed as raising an APA claim against the Bureau itself under an agency theory. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, the APA only authorizes challenges to "final" agency actions. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *see also Lunney v. United States,* 319 F.3d 550, 554 (2d Cir.2003) ("The APA authorizes only a challenge to a 'final' action of an 'agency.' "); *Air Espana v. Brien,* 165 F.3d 148, 152 (2d Cir.1999) ("The APA explicitly requires that an agency action be final before a claim is ripe for review."). The finality requirement is jurisdictional, *see Air Espana,* 165 F.3d at 152, and serves the following purposes:

It allows the agency an opportunity to apply its expertise and correct its mis-

---

7. The APA does not confer jurisdiction on the court to review the decision of an administrative agency. *See Clark v. Commodity Futures Trading Comm'n,* 170 F.3d 110, 113 n. 1 (2d Cir.1999) (citing *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). However, federal courts have subject matter jurisdiction under section 1331 over a claim

that an agency has violated the APA. *See Reiner v. West Village Assocs.,* 768 F.2d 31, 33 (2d Cir.1985) (per curiam) (citing *Califano,* 430 U.S. at 105, 97 S.Ct. 980). Therefore, a justiciable APA claim may confer the subject matter jurisdiction needed to support plaintiff's request for declaratory relief.

takes, it avoids disrupting the agency's processes, and it relieves the courts from having to engage in "piecemeal review which is at the least inefficient and upon completion of the agency process might prove to have been unnecessary."

*DRG Funding Corp. v. Secretary of Hous. and Urban Dev.*, 76 F.3d 1212, 1214 (D.C.Cir.1996) (quoting *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 242, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980)).

■ Interrelated to the finality requirement is the doctrine of ripeness. A dispute is not ripe for adjudication unless there is " 'a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.' " *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Assn. v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)). Courts traditionally have been reluctant to grant declaratory judgments when administrative determinations are involved "unless the effects of the administrative action challenged have been 'felt in a concrete way by the challenging parties.' " *Reno v. Catholic Soc. Serv. Inc.*, 509 U.S. 43, 57, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

■ In determining whether a controversy is ripe for review, a court should evaluate both "the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507. One of the factors courts consider in making the ripeness determination is whether the agency action being reviewed is final. *See In re Combustion Equip. Assocs., Inc.*, 838 F.2d 35, 37–38 (2d Cir. 1988). In general, for an agency action to

be final, the following conditions must be satisfied:

"First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined or from which legal consequences will flow."

*Top Choice Distribs., Inc. v. United States Postal Serv.*, 138 F.3d 463, 466 (2d Cir. 1998) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (citations and internal quotation marks omitted)). *See also Franklin v. Massachusetts*, 505 U.S. 788, 797, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.").

Here, plaintiff's classification as a prisoner subject to section 4042(b) notice will be reviewed every six months before his release and may be changed prior to his release date. Furthermore, plaintiff will suffer little hardship if a judicial decision is deferred until then. Accordingly, because notice is not yet a certainty, the Bureau has not taken any final action that could be found to violate the APA. Given this lack of finality, any claim by Estrella against the Bureau stemming from its implementation of Program Statement 5110.15 is not ripe for review at this time. Because plaintiff has failed to bring a justiciable APA claim, this Court has no subject matter jurisdiction over his declaratory judgment action. Such action must therefore be dismissed without reaching the merits.

## IV. CONCLUSION

For the foregoing reasons, defendants are dismissed from this lawsuit given plaintiff's failure to state a claim upon

which relief can be granted and, alternatively, on the basis of qualified immunity. Plaintiff's request for a declaratory judgment is dismissed for lack of subject matter jurisdiction. Plaintiff's Amended Complaint is therefore dismissed in its entirety and the Clerk of the Court is directed to close this case.