**Feng Suo ZHOU, Gang Liu, Yan Xiong, Dan Wang, and John Doe, on his own behalf, and on behalf of the estate of his deceased sister Jane Doe, Plaintiffs,**

v.

**Li PENG, Defendant.**

**No. 00 CIV.6446(WHP).**

United States District Court, S.D. New York.

Sept. 30, 2003.

---

Beth Stephens, Jennifer M. Green, Shayana Kadidal, Center for Constitutional Rights, New York City, for Plaintiffs.

David S. Jones, United States Attorney's Office, New York City, for defendant.

*MEMORANDUM AND ORDER*

PAULEY, District Judge.

This action stems from the 1989 Tiananmen Square protests in Beijing, the People's Republic of China. Plaintiffs were student participants in that demonstration, who now allege claims under the Alien Tort Claims Act, 28 U.S.C. § 1350, the Torture Victim Protection Act of 1991, Pub.L. No. 102–256, 106 Stat. 73 (1992), *codified at* 28 U.S.C. § 1350 note (2003), and various other laws, international treaties, agreements and conventions. On August 8, 2002, this Court issued a Memorandum and Order upholding plaintiffs' service of process on defendant Li Peng, who at the time of the protests was the Premier of the People's Republic of China, and most recently served as President of the National People's Congress. *See Feng Suo Zhou v. Li Peng*, No. 00 Civ. 6446(WHP), 2002 WL 1835608 (S.D.N.Y. Aug.8, 2002). That service was predicated on an order signed by District Judge Richard Conway Casey sitting as the Part I Judge for this Court on August 30, 2000, which permitted substituted service on Li Peng through the United States Department of State Security Detail protecting him. The issue now before this Court is whether the Part I Order should be vacated because it (1) violated the United States Government's sovereign immunity, and (2) was impermissible under the separation of powers doctrine.[1] For the reasons stated below, this Court finds that the Part I Order violated the Government's sovereign immunity and thus must be vacated.[2]

---

1. The Government also moves to vacate this Court's August 8, 2002 Memorandum and Order based on that opinion's reliance on the validity of the Part I Order. If the Part I Order is void, then the portions of the August 8 Memorandum and Order that presumed the validity of the Part I Order, namely the Court's finding that service was effected and constitutional, must be vacated. At the time, that presumption was appropriate because the Government did not contest the validity of the Part I Order.

2. The Government appears here on its own behalf seeking relief from the Part I Order, and this Court's August 8 Memorandum and

## Background

The circumstances surrounding the filing and prosecution of this action are described in detail in this Court's prior Memorandum and Order. Nevertheless, to understand the present motion, some repetition is warranted. For a full description of the facts, with citations, see *Feng Suo Zhou*, 2002 WL 1835608, at *1–7.

### I. *The Part I Order*

Plaintiffs commenced this action on August 28, 2000, by filing the summons and complaint under seal. At that time, Li Peng had arrived in New York to attend the Millennium Conference of Presiding Officers of National Parliaments, at the United Nations from August 28 until September 1. On August 28, Marie Schembri, a licensed private investigator for plaintiffs, went to the Waldorf Towers in midtown Manhattan, where Li Peng was staying, to investigate the possibility of serving the summons and complaint on him. Schembri ascertained that Li Peng was protected by an array of security that included the New York City Police Department ("NYPD") and a special security detail provided by the United States Government. Schembri was advised by the NYPD that Li Peng's security in New York was similar to that provided to the President of the United States.

Based on Schembri's assessment of the security surrounding Li Peng, plaintiffs moved, *ex parte*, on August 28, 2000, for leave to effect service by alternate means since the statutory means were impracticable. Plaintiffs submitted a proposed order with their application based on an order successfully utilized in *Kadic v. Karadzic*, 70 F.3d 232, 246 (2d Cir.1995). The proposed order provided:

> [T]hat service shall be accomplished by delivering a copy of the summons and complaint to any employee of the United States government or its agencies who is guarding defendant Li Peng during his stay in New York. Said employee is to forthwith provide said defendant with the said copy of the summons and complaint during defendant's stay in New York.

On August 30, 2000, Judge Casey granted plaintiffs' *ex parte* application and signed their proposed Order ("Part I Order"). Like the other documents in this action, the Part I Order was filed under seal. The next day, however, Judge Casey signed another *ex parte* order unsealing the file in this action.

### II. *Service on Li Peng's Department of State Security Detail*

On August 31, 2000, at approximately 6:00 a.m., plaintiffs' process server, Luis Ayala, accompanied by Schembri, Xiao Qiang, Executive Director of Human Rights in China, Ed Wong, a *New York Times* reporter, and Spencer Platt, a *New York Times* photographer, went to the garage entryway of the Waldorf Towers lobby to locate "an employee of the United States or its agencies who [was] guarding Li Peng during his stay in New York." After canvassing the area, Ayala, Schembri, and Wong approached several NYPD detectives and identified themselves. Ayala and Schembri informed the detectives that they had a court order authorizing service of process on Li Peng, and re-

Order, pursuant to 28 U.S.C. § 517, which provides: "The Solicitor General, or any officer of the Department of Justice, may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States, or in a court of a State, or to attend to any other interest of the United States."

quested to speak to a member of the United States Security Detail. Three gentlemen, one of whom was Special Agent Robert Eckert of the United States Department of State's Security Detail for Li Peng, approached Schembri, Ayala, and Wong. As they spoke, they were joined by Qiang and Platt.

While the participants' accounts concerning what occurred next diverge somewhat, it is undisputed that a copy of the summons and complaint was handed to Special Agent Eckert, who in turn brought those documents to the Security Detail's command post in the Waldorf Towers. Schembri and her contingent claim to have informed Special Agent Eckert of the existence of the Part I Order, explained it, and displayed it for his perusal. For his part, Special Agent Eckert did not recall seeing the Part I Order or hearing about its existence during the exchange. Nevertheless, Special Agent Eckert acknowledged that he understood that the summons and complaint concerned an action against Li Peng and were meant to be given to the defendant. Moreover, in a September 13, 2000 incident report, Special Agent in Charge Thomas Barnard ("SAC Barnard") noted that he was advised that "individuals were waiting in the Hotel lobby to serve a 'court order' to the 'U.S. State Department agents assigned to the Chinese Detail.'"

On the morning of August 31, 2000, SAC Barnard gave a self-described "heads-up" to "a Chinese diplomat assigned to the United Nations mission here in New York" that "there were some legal papers." That diplomat was a "senior ranking member" and "liaison between the protection detail and the Chinese delegation." SAC Barnard also forwarded the summons and complaint to his superiors.

That afternoon, Darlene Kirk, an employee of the Department of State's Press and Public Affairs Office for Diplomatic Security, left a telephone message for Schembri, indicating her intent to mail a letter to Schembri, but providing no details. That same day, officials of the Department of State's Office of the Legal Adviser informed Assistant United States Attorney Wendy H. Schwartz ("AUSA Schwartz") that a Department of State protective detail for Li Peng received unspecified court papers.

On Friday, September 1, 2000, the *New York Times* reported that an order authorizing service of process on the Diplomatic Security Detail had been issued by Judge Casey. More specifically, the *New York Times* described the allegations of the complaint, the details of the Part I Order, and the circumstances surrounding service on the Security Detail. Edward Wong, *Chinese Leader Sued in New York Over Deaths Stemming from Tiananmen Crackdown*, N.Y. Times, Sep. 1, 2000, at A6. The *New York Times* report quoted a Department of State spokesperson as saying, "[w]e are not in a position to accept such a document on behalf of a foreign official." Wong, *supra*. Juxtaposed with the spokesperson's comment, the *New York Times* noted, "[h]owever, earlier this week, Judge Richard Casey ruled that a federal employee guarding Mr. Li could accept the summons, given the difficulty of reaching Mr. Li." Wong, *supra*.

After learning of the *New York Times* report, AUSA Schwartz called Judge Casey's chambers around midday on September 1 to inquire about any order regarding the United States Government and/or service of process in this action, but was unable to obtain any information. Nevertheless, AUSA Schwartz did obtain a copy of the summons and complaint from the Department of State's Office of the Legal Adviser. For the remainder of that afternoon before the Labor Day holiday weekend, AUSA Schwartz sought updates from

the Department of State concerning Li Peng's schedule, and eventually learned that he was scheduled to leave New York sometime after 11:00 p.m. on September 1. It was not until 6:10 p.m., and again at approximately 7:30 p.m., on Friday evening, that AUSA Schwartz attempted to contact plaintiffs' counsel. On both occasions, she left voicemail messages for them requesting a return call as soon as possible to indicate whether an order requiring any action by United States officials was extant. In one of her voicemails, AUSA Schwartz informed plaintiffs' counsel that the Government had neither received nor confirmed the existence of any court order relating to service of Li Peng, and as such would be returning the summons and complaint to counsel.

Li Peng departed New York's John F. Kennedy International Airport for Beijing at 11:40 p.m. on September 1, 2000. On Tuesday, September 5, 2000, the first business day after the Labor Day weekend, AUSA Schwartz returned to her office to find that plaintiffs' counsel faxed two copies of the Part I Order—the earliest of which bore a facsimile legend indicating it was transmitted at 11:12 p.m. on September 1, 2000.

After an affidavit of service was filed, the Government raised certain issues concerning whether service was effected on Li Peng. Plaintiff submitted a brief supporting its position that Li Peng was properly served, and the Government filed a Statement of Interest pursuant to 28 U.S.C. § 517 in opposition to plaintiffs' memorandum. This Court determined that service on Li Peng was effected by delivery of the summons and complaint on Li Peng's Security Detail, and that such service was constitutional. *Feng Suo Zhou*, 2002 WL 1835608, at *10–15.

The issue now before this Court is whether the Part I Order, and thus deriva-

tively portions of this Court's August 8 Memorandum and Order, must be vacated. The Government proffers two independent bases for vacating the orders: (1) the Part I Order violates the Government's sovereign immunity; and (2) the Part I Order is an impermissible intrusion on the Executive Branch's power over foreign affairs under the separation of powers doctrine. Plaintiffs contend that the Part I Order should not be vacated because: (1) it does not compel the Government to act in any way; (2) even if the Part I Order compels the Government to act, the Government's immunity has been statutorily waived by the Administrative Procedure Act; (3) the Government's repetitive assertion of the separation of powers argument is untimely; and (4) the Part I Order is not an intrusion on the Executive Branch's foreign affairs powers and is thus permissible under the separation of powers doctrine.

*Discussion*

I. *Legal Standard*

 This Court has the inherent power to modify or vacate its interlocutory orders. *See* Fed.R.Civ.P. 60 Advisory Comm. Notes to 1946 Amendment ("[I]nterlocutory judgments are not brought within the restrictions of this rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."); *NYS–ILA Med. v. Salco Trucking Corp.*, No. 90 Civ. 5949(CSH), 1993 WL 546669, at *1 (S.D.N.Y. Dec.30, 1993) (noting the Court's inherent power and citing the 1946 Advisory Committee Note to Rule 60); *cf. United States v. Lauersen*, Nos. 01–1526, 01–1600, 2003 WL 22119742, at *7 (2d Cir. Sept.15, 2003) ("As a general matter, any interlocutory ruling can be reconsidered prior to the entry of a final judgment."); *Sierra Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 256

(2d Cir.1984) (noting that a trial court's power to modify its own injunction, "like the power over all its orders, is inherent"). Although the Government seeks to vacate two interlocutory orders, its motion is akin to a Rule 60(b)(4) motion to relieve a party from a final judgment or order where the judgment is void. Fed.R.Civ.P. 60(b)(4). Therefore, although the Court's inherent powers, and not Rule 60, are the applicable standard, this Court will apply a Rule 60(b)(4) analysis to this analogue motion. *See, e.g., Salco Trucking,* 1993 WL 546669, at *1 (applying Rule 60(b) standards to motion to vacate interlocutory order).

■ Rule 60(b)(4) requires vacatur of a judgment, order, or proceeding if that judgment, order or proceeding is void. *Tuff–N–Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc.,* 99 F.Supp.2d 450, 455 (S.D.N.Y.2000); *accord Smalls v. Batista,* 22 F.Supp.2d 230, 231 (S.D.N.Y.1998) (district courts lack discretion on Rule 60(b)(4) motions). Plaintiffs and the Government agree that if this Court lacked subject matter jurisdiction over the Part I Order then the Part I Order is void. *See United States v. Forma,* 42 F.3d 759, 762 (2d Cir.1994) ("[I]f there was no subject matter jurisdiction ... then the default judgment entered ... is void."); *Tuff–N–Rumble Mgmt.,* 99 F.Supp.2d at 454–55 ("A judgment is void and subject to vacatur if the court lacks subject matter jurisdiction."). Plaintiffs and the Government also agree that the sovereign immunity of a party would eliminate this Court's subject matter jurisdiction over the issue or action barring an appropriate waiver. *See Lunney v. United States,* 319 F.3d 550, 554 (2d Cir.2003) ("Sovereign immunity is a jurisdictional bar ...."); *First Fidelity Bank, N.A. v. Gov't of Antigua & Barbuda—Permanent Mission,* 877 F.2d 189, 195 (2d Cir.1989) (noting that where party had sovereign immunity, a "default judg-ment ... would be void for want of subject matter jurisdiction"). Indeed, a "waiver of sovereign immunity is a prerequisite to subject-matter jurisdiction, but the issues of subject-matter jurisdiction and sover-eign immunity are nonetheless 'wholly dis-tinct.'" *Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir. 1999) (citing *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 786–87 n. 4, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)); *ac-cord Up State Federal Credit Union v. Walker,* 198 F.3d 372, 374 (2d Cir.1999) ("It is well established that in any suit in which the United States is a defendant, a waiver of sovereign immunity with respect to the claim asserted is a prerequisite to subject matter jurisdiction.").

In its prior Memorandum and Order, this Court noted:

[T]he validity of the Part I Order direct-ing United States protective personnel to deliver the summons and complaint to Li Peng is not at issue in this matter. The Government raises concerns about the effects such an order would have on its ability to protect visiting dignitaries and on foreign relations in general, but does not contest its validity.

*Feng Suo Zhou,* 2002 WL 1835608, at *7 n. 6. The Government now challenges the validity of the Part I Order. In explaining its lengthy delay in contesting the validity of the Part I Order, the Government claims that it interpreted this Court's prior request for briefing to be limited to the effectuation of service issue. Further, the Government argues that its delay is imma-terial because its motion is directed to this Court's subject matter jurisdiction, and therefore can be raised at any time.

■ Although the time to file a Rule 60(b)(4) motion is elastic, requiring only that it be filed within a "reasonable time,"

Fed.R.Civ.P. 60(b), the Government's current motion is not subject to that limitation. It is axiomatic that issues of the Court's subject matter jurisdiction may be raised at any time, including on appeal and *sua sponte* by the Court. *Fed. Dep. Ins. Corp. v. Four Star Holding Co.*, 178 F.3d 97, 100 n. 2 (2d Cir.1999) ("Although the parties did not brief the issue in their original submissions on appeal, the Court may examine subject matter jurisdiction, *sua sponte*, at any stage of the proceeding.") (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)); *see also* Fed.R.Civ.P. 12(h)(3) ("Wherever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Franceskin v. Credit Suisse*, 214 F.3d 253, 257 (2d Cir.2000) (addressing subject matter jurisdiction on appeal *sua sponte* ). Thus, to the extent the Government's motion is based on a lack of subject matter jurisdiction, it can never be untimely. To the extent that the Government's motion is not based on subject matter jurisdiction, this Court would apply the reasonable time limitation from Rule 60(b). However, for the reasons set forth below, this Court need not reach any of those arguments.

## II. *Sovereign Immunity*

■■■ "It is long settled law that, as an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of that immunity." *United States Envtl. Prot. Agency v. Gen. Elec. Co.*, 197 F.3d 592, 597 (2d Cir.1999), *amended on reh'g*, 212 F.3d 689 (2d Cir.2000) (citing *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 733–34, 102 S.Ct. 2118, 72 L.Ed.2d 520 (1982); *United States v. Testan*, 424 U.S. 392, 399,

96 S.Ct. 948, 47 L.Ed.2d 114 (1976)); *accord United States v. White Mountain Apache Tribe*, 537 U.S. 465, 123 S.Ct. 1126, 1131–32, 155 L.Ed.2d 40 (2003) ("Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity ...."). Whether a proceeding is deemed against the sovereign is determined by analyzing whether "the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (internal quotation marks omitted); *accord Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 & n. 11, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Gen. Elec.*, 197 F.3d at 597.

■■■ The Part I Order compelled the Government to act, and consequently infringed on its sovereign immunity. The Part I Order directed the employee of the United States Department of State to whom the summons and complaint was delivered "to forthwith provide said defendant [Li Peng] with the said copy of the summons and complaint during defendant's stay in New York." (Part I Order.) Thus, in the absence of waiver, the Part I Order is barred by sovereign immunity. *See Gen. Elec.*, 197 F.3d at 597–99 (holding that enforcement of a third-party subpoena issued to the EPA "compel[led] the EPA to act and therefore is barred by sovereign immunity in the absence of a waiver"); *see also Meisel v. Fed. Bureau of Investigation*, 204 F.Supp.2d 684, 687–89 (S.D.N.Y.2002) (applying *Gen. Elec.* to state court subpoena issued to FBI).

Plaintiffs contend that the Part I Order does not implicate sovereign immunity because this Court found in its August 8 Memorandum and Order that service was "completed" when the summons and complaint were delivered to the employee of

the Department of State. *Feng Suo Zhou,* 2002 WL 1835608, at *11. Thus, they argue that the Part I Order should be dissected and that the second sentence which compels the Government to act is surplusage. Specifically, plaintiffs argue that "this Court has already held that service was effectuated when the State Department employee was handed the complaint and summons ... [and thus] [t]he second sentence of the Part I Order, stating that the U.S. Government official is to deliver the papers to Li Peng, is not at issue in this case." (Pls.' Opp. at 4–5.)

This Court disagrees. The Part I Order must be read in its entirety. Nothing in the August 8 Memorandum and Order permits plaintiffs to excise an entire sentence from the Part I Order. This Court previously determined that service of process was "completed" based on the first sentence of the Part I Order, but held that service was constitutional based on consideration of the Part I Order as a whole. Specifically, once the Government received the summons and complaint without an accompanying order permitting or directing such service, the Government was on inquiry notice to ascertain whether a court order directing service through the Department of State Security Detail existed. The second sentence of the Part I Order increased the likelihood that the summons and complaint was reasonably calculated to reach Li Peng, and therefore was material to this Court's determination that service was constitutional. Thus, the Court's reliance on the second sentence, while not

explicit, was nonetheless integral to its holding. Accordingly, this Court will not ignore the second sentence of the Part I Order for the purposes of sovereign immunity analysis.[3] Therefore in the absence of a waiver, the Part I Order violates the Government's sovereign immunity.[4]

A. *Waiver of Sovereign Immunity*

"A waiver of the sovereign immunity of the United States 'cannot be implied but must be unequivocally expressed.'" *Franconia Assocs. v. United States,* 536 U.S. 129, 141, 122 S.Ct. 1993, 153 L.Ed.2d 132 (2002) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)); *accord White Mountain Apache Tribe,* 123 S.Ct. at 1132 ("The terms of consent to be sued may not be inferred, but must be unequivocally expressed."); *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text."). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane,* 518 U.S. at 192, 116 S.Ct. 2092 (citing *United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995); *Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981)); *accord Department of the Army v. Blue Fox, Inc.,* 525 U.S.

---

**3.** Moreover, plaintiffs drafted the Part I Order with a specific direction that the Security Detail deliver the documents to Li Peng. Their effort to avoid the consequences of that language in the context of a sovereign immunity challenge is unavailing. This Court declines to rewrite the Part I Order.

**4.** While the Part I Order closely tracks the order for substituted service in *Kadic v. Ka-*

*radzic,* 70 F.3d 232 (2d Cir.1995), the Government in that case never raised its sovereign immunity over the use of Special Agents of the Department of State Security Detail to hand the complaint to Karadzic. That the Government chooses to assert its sovereign immunity in some instances but not others is the Government's prerogative.

255, 261, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999) ("We have frequently held, however, that a waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign."); *Lunney*, 319 F.3d at 554 ("[A] waiver of sovereign immunity is to be construed strictly and limited to its express terms."). It is plaintiffs' burden to satisfy this "high standard" and prove that a waiver of immunity exists. *Blue Fox*, 525 U.S. at 261, 119 S.Ct. 687; *accord Lunney*, 319 F.3d at 554.

■ Plaintiffs assert only one basis for waiver of the Government's sovereign immunity premised on the Administrative Procedure Act ("APA"), specifically 5 U.S.C. § 702 (2003). Section 702 provides, in pertinent part:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States . . . .

5 U.S.C. § 702.

■ Plaintiffs' reliance on the express waiver of sovereign immunity in the APA is misplaced. First, a Government agency's decision that is committed to its discretion by law is not reviewable under the APA. *See Lunney*, 319 F.3d at 558 (citing *Lincoln v. Vigil*, 508 U.S. 182, 190–91, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993)); *ac-*

*cord Schneider v. Feinberg*, Nos. 03–6124, 03–6130, 2003 WL 22220520, at *10 (2d Cir. Sept.26, 2003). That is because there is no APA jurisdiction where "the statute or regulation said to govern the challenged agency action 'is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Lunney*, 319 F.3d at 558 (quoting *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)) (emphasis in original); *accord Schneider*, 2003 WL 22220520, at *10. Thus, the APA "requires careful examination of the statute on which the claim of agency illegality is based, and requires dismissal when there is no law to apply." *Lunney*, 319 F.3d at 558 (citing *Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)); *accord Schneider*, 2003 WL 22220520, at *10.

■ Moreover, the APA's "arbitrary and capricious" standard set forth in 5 U.S.C. § 706(2)(a), "cannot be sufficient by itself to provide the requisite 'meaningful standard' for courts to apply in evaluating the legality of agency action." *Lunney*, 319 F.3d at 559 n. 5 (citing *Heckler*, 470 U.S. at 829–30, 105 S.Ct. 1649); *accord Schneider*, 2003 WL 22220520, at *10. To allow agency review based solely on the APA's arbitrary and capricious standard would render the APA's limitation on agency review useless "and nothing would ever be 'committed to agency discretion by law.'" *Lunney*, 319 F.3d at 559 n. 5.

Plaintiffs contend that the Department of State's actions are unlawful because they deprive plaintiffs of the ability to utilize the Alien Tort Claims Act and the Torture Victim Protection Act, 28 U.S.C. § 1350 (2003). The Government deprives them this right, they contend, by effective-

ly shielding Li Peng from service of process, as well as from physical harm. However, plaintiffs fail to identify the statute that the Department of State allegedly violated. In contrast, the Government relies on 22 U.S.C. § 2709(a), which states in pertinent part,

> [S]pecial agents of the Department of State and the Foreign Service may ... (3) protect and perform protective functions directly related to maintaining the security and safety of—(A) heads of a foreign state, official representatives of a foreign government, and other distinguished visitors to the United States, while in the United States.

Thus, the Department of State's decision to protect Li Peng from harm is committed to its discretion, and a meaningful standard by which to review the conduct is absent. *See Schneider*, 2003 WL 22220520, at *10–11 (dismissing appeal in part for lack of subject matter jurisdiction where no standard of review besides APA's arbitrary and capricious standard could be applied against September 11 Victim Compensation Fund's Special Master's establishment of allegedly disproportionate consumption rates for September 11 victims); *Lunney*, 319 F.3d at 558–59 (affirming dismissal for lack of subject matter jurisdiction because United States Navy had discretion in determining what to do with Medal of Honor it accepted on behalf of sailor who perished at Pearl Harbor). Accordingly, the Department of State's conduct is not reviewable.

Second, plaintiffs cannot show that they brought an "action" under the APA to challenge the Department of State's con-

duct. Plaintiffs filed an *ex parte* application pursuant to Fed.R.Civ.P. 4(e) and N.Y. C.P.L.R. 308(5) to permit substituted service in light of Li Peng's Security Detail. That application was granted *ex parte* and was neither served nor delivered to the Department of State until after Li Peng departed the United States.[5] *Feng Suo Zhou*, 2002 WL 1835608, at **2–5, 10–11.

Relying on *General Electric*, 197 F.3d at 599, plaintiffs contend that "[i]t is not necessary to initiate an independent enforcement action against the Government in order to benefit from the right to review granted by the APA." (Pls. Opp. at 10.) In that action, a group of artists known as the Grand Street Artists sued General Electric concerning alleged environmental hazards at one of General Electric's former factories that it purchased. *Gen. Elec.*, 197 F.3d at 593–94. To defend itself, General Electric issued a subpoena duces tecum to the Environmental Protection Agency ("EPA"), and commenced a miscellaneous proceeding to compel compliance with that subpoena. The EPA moved to quash based on sovereign immunity. *Gen. Elec.*, 197 F.3d at 593.

The district court denied General Electric's motion to compel, and granted the motion to quash. The district court held that General Electric was required to file an independent lawsuit against the United States naming it as a defendant in order to invoke the waiver of sovereign immunity under the APA. *See Grand Street Artists v. General Electric*, 22 F.Supp.2d 299, 300 (S.D.N.Y.1998) *vacated and remanded by*

---

**5.** While there is a factual dispute as to whether anyone from the Department of State's Security Detail saw the Part I Order, the Department of State was never served with a copy of that order. *Feng Suo Zhou*, 2002 WL 1835608, at *3–4. Eventually, plaintiffs' counsel faxed a copy of the Part I Order to the United States Attorney's office at 11:12 p.m. on Friday, September 1, 2000. Li Peng's jet left JFK airport at 11:40 p.m. that evening. Not surprisingly, the fax was retrieved on Tuesday morning, September 5, 2000. *Feng Suo Zhou*, 2002 WL 1835608, at *5.

*General Electric,* 197 F.3d 592, *amended on reh'g,* 212 F.3d 689 (2d Cir.2000). The district court noted that "[t]here is nothing in the pertinent language of § 702 to suggest that Congress remotely intended to stretch the ordinary meaning of 'action' to encompass an ancillary motion against a non-party commenced, as here, not by filing an independent lawsuit but simply by moving to compel enforcement of a subpoena." *Grand Street Artists,* 22 F.Supp.2d at 300.

In vacating the district court's order, the Second Circuit held: "In our view, the APA allows the enforcement of a non-party subpoena duces tecum for discovery against the government through a motion to compel compliance. We think that the district court interpreted 'action' in section 702 of the APA in too narrow a fashion for the purposes of this case." *Gen. Elec.,* 197 F.3d at 599. The Second Circuit concluded that the application to enforce the subpoena was an appropriate avenue for review of the EPA's conduct, and that an independent action was unnecessary because "it would result in time-consuming additional litigation that would either render the resulting discovery moot for the original litigation or unnecessarily delay that action." *Gen. Elec.,* 197 F.3d at 599. In treating a miscellaneous application for compliance with a subpoena as an "action," the Second Circuit

> recognize[d] the scheme for waiver of sovereign immunity for review of agency actions provided by the APA, permit[ted] the use of subpoenas for discovery to be served upon the United States as a non-party in accordance with the pertinent rules of procedure, and promote[d] judicial economy by allowing the underlying litigation to advance without delay.

*Gen. Elec.,* 197 F.3d at 599.

Whatever efficiencies are realized by permitting a party to forgo an independent action and bring a motion to enforce a subpoena, the same rationale does not apply to plaintiffs' *ex parte* application for substituted service. Plaintiffs never confronted the Government with any form of an application for access to Li Peng, or for assistance in serving process on him. Thus, the Government did not have a meaningful opportunity to respond or defend its immunity in court. In contrast, the motion to enforce the subpoena in *General Electric* was not *ex parte,* and the Government was afforded an opportunity to challenge the subpoena and assert its immunity. Thus, the Part I Order does not share that critical characteristic of the motion in *General Electric* to be deemed an "action" under the APA.

Judicial economy is not promoted by the potential for multiple proceedings before the district court concerning the validity of orders compelling the Government to act, as this case so clearly demonstrates. Further, permitting plaintiffs' *ex parte* application to qualify as an "action" does not comport with a strict application of the waiver in the APA. Assuming that plaintiffs' application for an order of substituted service would otherwise be deemed an "action" under the APA based on *General Electric,* the fact that it was made *ex parte* is fatal. At the very least, an action under the APA must provide the Government an opportunity to defend its agency's actions and present legal arguments against the waiver of its immunity. Plaintiffs' application for substituted service did not. This Court is convinced that although an independent action may not be necessary under the APA, an application on notice to the Government is required. Therefore, this Court concludes that plaintiffs' application for an order of substituted service is not an "action" under the APA.

Further, the litigation spawned after issuance of the Part I Order does not qualify

as a sufficient "action" under the APA to waive the Government's sovereign immunity. For purposes of APA waiver, the operative "action" was the application for the order permitting substituted service. It is the result of that application, the Part I Order directing the Government to act, that infringes on the Government's sovereign immunity, just as the result of the motion to compel enforcement of the subpoena was the infringing conduct in *General Electric. See* 197 F.3d 592 ("We agree with the district court that the enforcement of this subpoena duces tecum ... would compel the EPA to act and therefore is barred by sovereign immunity in the absence of a waiver."). Any waiver validating the Part I Order must have been in place at the time the order was issued. By litigating this matter over the last three years, the Government did not retroactively waive its sovereign immunity.

Finally, the *ex parte* nature of plaintiffs' application also prevents a finding that the Department of State's action with respect to Li Peng was "final" under the APA. "The APA authorizes only a challenge to 'final' action of an 'agency.'" *Lunney,* 319 F.3d at 554 (citing 5 U.S.C. §§ 701(a), 704); *accord Air Espana v. Brien,* 165 F.3d 148, 151–52 (2d Cir.1999). The Second Circuit has recently held that the "core question" concerning whether an agency's action is final under the APA is "'whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties.'" *Lunney,* 319 F.3d at 554 (quoting *Dalton v. Specter,* 511 U.S. 462, 470, 114 S.Ct. 1719, 128 L.Ed.2d

497 (1994)); *accord Estrella v. Menifee,* 275 F.Supp.2d 452, 460–62 (S.D.N.Y.2003). Plaintiffs failed to make a request to the Department of State for access to Li Peng or assistance in serving him. Absent any such request from plaintiffs, the relevant decisionmaking process at the Department of State could not occur. Thus, the Department of State's actions were not the result of a decisionmaking process, and cannot be "final" under the APA.[6] *See Estrella,* 275 F.Supp.2d at 461–62 (finding that where prisoner's classification would be reviewed every six months before release Bureau of Prisons' current classification is not a "final" action under APA); *Meisel,* 204 F.Supp.2d at 689–90 (FBI's actions on request for information were not final where parties continued to attempt to resolve the FBI's objections).

Accordingly, the express waiver of the Government's sovereign immunity in the APA is not applicable to this action, and the Part I Order must be vacated.

In view of this holding this Court need not reach the Government's alternative argument for vacatur, namely that the Part I Order violates separation of powers principles under the Constitution.

### Conclusion

For the reasons stated above, the Government's motion to vacate the Part I Order is granted. Further, the Government's motion to vacate those portions of this Court's August 8, 2002 Memorandum and Order that presumed the validity of the Part I Order, namely the ruling that service was effected on Li Peng and that

---

**6.** Plaintiffs' reliance on *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), and *Gulf Oil Corp. v. United States Dep't of Energy,* 663 F.2d 296 (D.C.Cir.1981), is unpersuasive. Those cases did not enunciate a general rule, but instead found that their unique circumstances warranted a finding that the "final" action requirement was satisfied or waived. *See Abbott Laboratories,* 387 U.S. at 150–55, 87 S.Ct. 1507; *Gulf Oil,* 663 F.2d at 308–13. No such circumstances exist here to similarly find the "final" action requirement satisfied.

service was constitutional, is granted as well. Accordingly, service of process on defendant Li Peng has not been effected.

SO ORDERED.